UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IAN J. CLARK,

    *Petitioner*,

v.

RON NEAL (Warden),

    *Respondent*.

No. 3:17-cv-00475-JD-MGG

**RETURN TO ORDER TO SHOW CAUSE**

Respondent, Ron Neal, by counsel, and pursuant to Rule 5 of the Rules Governing Section 2254 cases in the United States District Courts and this Court's order requiring Respondent to show cause why the writ should not be granted, answers the above-captioned petition and requests that this Court dismiss this action with prejudice because the claims raised in the instant petition are barred by procedural default and otherwise fail to allege any violation of clearly established federal law. In support of these defenses, Respondent has submitted the case information and necessary pleadings.

**JURISDICTION**

Petitioner, Ian J. Clark, is in the custody of Ron Neal, Warden of the Indiana State Prison, and is identified by offender number 104092. Clark challenges his 2008 Kosciusko County, Indiana, conviction for murder and his resulting sentence of life without parole. Clark brings this action pursuant to 28 U.S.C. § 2254 which

1

provides for federal collateral review of confinement based on the judgment of a state court.

## EXHAUSTION

Clark has exhausted available state court remedies by seeking direct appeal of his conviction, litigating a petition for post-conviction relief, appealing from the state post-conviction court's denial of his petition, and seeking discretionary review from the Indiana Supreme Court.

## FACTS

In considering this action for federal collateral relief, this Court must presume correct the facts as set forth by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *see Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (en banc), *rev'd on other grounds,* 521 U.S. 320 (1997). Moreover, Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Indiana Supreme Court found the following facts on direct appeal:

> In May 2007 Ian J. Clark was living in Pierceton with his fiancée Matara Muchowicz and her daughter Samantha. Samantha typically stayed with a friend while Clark and Matara were at work, but Clark had been laid off at some point during the month and in an effort to save money Matara began leaving Samantha with Clark for the day.
>
> When Matara arrived home on May 25th, around 2 p.m., she found Clark lying on the couch with Samantha on his chest, naked and blue. Matara approached the couch and noticed blood on the blanket that was covering up Clark. After being questioned about the blood, Clark sat up and then fell and stumbled into the coffee table, dropping Samantha on the ground. Clark told Matara that Samantha was breathing. Matara tried to wake Samantha, but she was cold.

Samantha's head was thrown back and she was gurgling. Matara took Samantha and went to call 911. Clark told Matara to put the phone down and that Samantha was "brain dead" and then lit a cigarette and turned on the television.

Matara dialed 911, but Clark grabbed the phone out of her hand. Clark told Matara there was nothing wrong with Samantha and that she was breathing. He kept telling Matara that Samantha was fine. Matara told Clark they needed to call an ambulance. Clark continued to try to prevent Matara from calling 911. Clark took the phone from Matara and tried to drag her away from the phone. When Matara managed to dial 911 and ask the operator for help, Clark struck Matara in the back of the head with his fist.

Matara managed to make a second call to 911. Matara wanted to learn CPR because Samantha was not breathing. The 911 operators could hear Clark interrupt and disconnect the attempted calls. After completing the 911 call, Matara put a diaper on Samantha and went outside where she met a police officer.

The Kosciusko County sheriff's deputy who had arrived on scene tried to revive Samantha until paramedics arrived. The deputy noticed Samantha suffered a split lip, was limp, her jaw was crushed, and she had bruises all over her body. Paramedics were unable to revive her. They observed that Samantha had bruises all over her body, her right jaw was swollen, black and blue, and she had blood around her mouth, and bruises on her chest area that resembled fingerprints. Later analysis put Samantha's time of death at 11 a.m. to 12 noon.

The officers arrested Clark and transported him to the hospital with blood on his shirt. While waiting in an exam room with police, Clark told a detective that "I will f ...ing kick your ass. I will send the Hell's Angels to kill you. F ... it. It's only a C felony. I can beat this." (Tr. at 90.)

Police discovered diapers, tissues, a blanket, a shelf on the coffee table, a pillow and pajamas all stained red in the home. Police also discovered blood spatters near the sink and red spots near the door in the bathroom. They observed a hole in the bathroom wall, sixty-five inches from the floor, with bloodstains and brown hair embedded in it. (Tr. at 254–55, 258–259.) The blood and hair found in the hole was Samantha's. (Tr. at 258, 262.) The blood on Clark's shirt was Samantha's.

> The list of injuries was appalling. Before Samantha's death she suffered multiple contusions, lacerations, abrasions and or deformities to her mouth, ear, chin, forehead, eyes, neck, jaw, shoulders, cheeks, arms, ribs, chest, back, scapula, kidney areas, areas over vital organs, abdomen, arm pits, nipples, temple, nose, lips, wrists, hands, orbits, buttocks, and thigh; her ulna was broken, her wrist was broken, her lung was bruised, her jaw was broken or dislocated; she had a subdural hematoma, intra-abdominal wounds, including a torn colon, an atlanto-occipital dislocation (her head was "ripped off her neck,"—the ligaments were disrupted from the spinal column so that only "tissue and skin" held it to the body), and cerebral contusions or bruising of her brain. (Tr. at 160, 279–84, 287, 298, 300, 310, 313, 318–36, 342–44, 356.)
>
> Samantha suffered at least twenty separate injuries, more than one of which would be lethal, and she was still alive when she sustained many of them. An emergency room doctor described Samantha's "fresh" injuries as the worst he had observed in twenty years. (Tr. at 285, 287.) Neither one fall, nor multiple falls, nor multiple household accidents, could possibly have caused Samantha's injuries. The official cause of death was by multiple blunt force injuries and the official manner of death was ruled a homicide.
>
> The State charged Clark with murder. Clark withdrew his voluntary intoxication defense just before trial and withdrew his insanity defense during trial. After the jury found him guilty of murder, the State and Clark stipulated to the single charged aggravator: that the victim was less than twelve years of age. The jury recommended life without the possibility of parole, and the court sentenced Clark accordingly.

(Ex. F; *Clark v. State*, 915 N.E.2d 126, 128-29 (Ind. 2009)).

During jury selection, trial counsel discussed with prospective jurors concepts regarding the lack of intent to kill (Tr. 45, 58, 60, 63, 64, 69, 70, 71, 72, 75, 83, 101, 103, 108, 115, 125, 126, 143, 144, 145). During the defense case-in-chief, trial counsel presented evidence of Clark's blood-alcohol content level and increased dependence on alcohol. Trial counsel also highlighted evidence showing that Clark made no attempt to cover evidence or flee despite having had access to a car (Tr. 65,

68- 69; 96-98; Tr. 370-375, 390-391). Trial counsel also presented testimony from Dr. Peter Method, the Director of the Indiana Department of Toxicology, that Clark's ethanol level was .125 at 6:09 p.m. and his blood-alcohol content range at 2:00 p.m. would have been .168 to .208 (Tr. 370). Dr. Method testified that Clark's blood alcohol content at noon on May 25 would have been .192 to .248 (Tr. 373). Dr. Method also testified generally about alcohol as a central nervous system depressant, stating that some people cannot remember what they did while under the influence of a significant amount of alcohol (Tr. 374-75).

At his trial, Clark testified that he did not intend to kill Samantha, insisting instead that, "I was negligent. I was reckless. I was irresponsible. I was an asshole. Sorry, but for a lack of a better word, but, yeah. That's what I am, but I'm not an intentional killer" (Tr. 469). The State asked Clark, "You say your conduct is reckless?" Clark responded, "Most definitely. That's what your evidence shows" (Tr. 469). During his testimony, Clark lectured the prosecutor on the law after excoriating him for refusing to offer him a guilty plea to reckless homicide because he was drunk. Clark stated before the jury, "A reckless act that ends in the death of a human being is termed reckless homicide. I believe, through the evidence, and common sense, Mr. Hearn, that I am guilty of reckless homicide. I am not guilty of an intentional crime. And the evidence, one hundred percent, shows that" (Tr. 472). Then during following cross-examination, Clark stated: "I'm guilty. I will answer this for you one more time, and then I won't answer your question if you pose it another way. So get this straight. I'm guilty of a reckless act. Period." (Tr. 472).

5

Clark testified that he was severely intoxicated and had a propensity to black out for a week leading up through the day of Samantha's death (Tr. 148-49, 391, 411). Clark testified that he had no memory of what happened on the day of Samantha's death (Tr. 429). He testified that he made no attempts to hide or destroy evidence (Tr. 96-102), and that he had accidentally dropped Samantha (Tr. 136-38). In closing, trial counsel argued that Clark's actions were not murder because there was no specific intent to take a life (Tr. 157). Trial counsel urged the jury that it was not Clark's intention or purpose to kill the child (Tr. 160). The jury returned a verdict of guilty on the charge of murder, and in a subsequent penalty phase found that the State had proved beyond a reasonable doubt that Samantha was a child less than 12 years old, and that this aggravating circumstance outweighed any mitigating circumstances (DA App. 100, 389, 414; Tr. 100). On April 3, 2008, the trial court sentenced Clark to life without parole in accordance with the jury's recommendation (DA App. 469-78).

Clark sought direct appeal to the Indiana Supreme Court and argued that: (1) the trial court abused its discretion in admitting a posting on Clark's MySpace account because it was character evidence prohibited by Indiana Rule of Evidence 404(b), and; (2) the prosecutor committed misconduct in asking Clark on cross-examination whether he was familiar with a Hell's Angels code regarding hurting a baby (Ex. D; Ex. F; *Clark*, 915 N.E.2d at 129-31). Clark additionally raised five allegations of fundamental error consisting of: (1) the trial court's comment in the context of Clark's continued comments and interjections during the trial; (2) the

6

prosecutor's suggestion that the crime of reckless homicide was more appropriately intended for deaths resulting from reckless driving; (3) the prosecutor's comment in closing that this case would stand for the proposition that the community would not tolerate what happened in this case; (4) improper use of torture as an aggravating circumstance, and; (5) the prosecutor's questioning of prospective jurors in voir dire about whether they believed some people were simply evil, and that there was a distinction between evil and mental illness (Ex. F; *Clark*, 915 N.E.2d at 131-33). On October 15, 2009, the Indiana Supreme Court affirmed Clark's conviction and his sentence of life without parole (Ex. C, F). The Indiana Supreme Court denied Clark's petition for rehearing on February 22, 2010 (Ex. C).

Clark filed a *pro se* petition for post-conviction relief on March 22, 2010. The petition was amended by counsel on August 10, 2015, and an evidentiary hearing was held in January 2016 (Ex. K at 5; Ex. O at 1). Clark's trial counsel was not available to testify at the hearing because he is deceased. His appellate counsel was available and testified concerning the choice of issues raised on direct appeal. Appellate counsel considered whether to raise certain unpreserved issues on direct appeal by arguing fundamental error or whether to preserve the issue as one that might support a claim of ineffective assistance of counsel in a petition for post-conviction relief (Ex. K at 5). On April 6, 2016, the trial court denied Clark's petition for post-conviction relief in an order containing detailed findings addressing Clark's claims of ineffective trial and appellate counsel (Ex. K at 5; Ex. O).

On appeal from his post-conviction proceedings, Clark argued that trial counsel had rendered ineffective assistance by failing to: (1) move for a mistrial when the trial court overruled his objection to an amendment to the charging information during trial to reflect that Clark was charged with "knowingly or intentionally" killing Samantha (as opposed to "knowingly and intentionally" killing Samantha); (2) withdraw a notice of insanity defense until midtrial after two examining psychiatrists had opined that Clark understood the wrongfulness of his conduct, and; (3) object to comments by the prosecutor in closing that Clark started drinking to create a defense to this conduct (Ex. H at 14-23, Ex. K). Clark additionally argued cumulative prejudice from his allegations of trial counsel deficiency (Ex. H at 23-24). Clark also raised a claim the appellate counsel had been ineffective for failing to challenge the amendment of the charging information (Ex. H at 26-27, Ex. K at 14-16).

The Indiana Court of Appeals affirmed the state post-conviction court on February 27, 2017, finding in relevant part that overwhelming evidence supported the jury's verdict and that Clark's voluntary intoxication was legally irrelevant to whether he had recklessly, knowingly, or intentionally killed two-year-old Samantha (Ex. K at 19-20). The Indiana Court of Appeals further determined that appellate counsel had not been ineffective in declining to challenge the amendment to the information as Indiana Code section 35-34-1-5(c), allowed an amendment at any time with respect to any defect, imperfection, or omission in form that does not prejudice the substantial rights of the defendant (Ex. K at 15). The Court of Appeals

noted that the trial court appropriately observed that it would be required to correctly instruct the jury on the statutory elements of the offense, and concluded that the amendment at issue was one of form rather than substance, as it conformed to the precise language of Indiana's murder statute (Ex. K at 16). Clark filed a Petition to Transfer, which the Indiana Supreme Court denied on May 25, 2017 (Ex. L, Ex. N).

On June 19, 2017, Petitioner filed a *pro se* petition for a writ of habeas corpus (D.E. 1). On February 12, 2018, this Court granted Petitioner until March 30, 2018, to file an amended petition (D.E. 14). Petitioner filed an amended pro se petition on February 22, 2018 (D.E. 15). On February 23, 2018, this Court ordered Respondent to show cause as to why Petitioner's requested relief is not warranted by May 17, 2018 (D.E. 17).

## ARGUMENT

### I.
### Standards Governing Federal Collateral Review.

In order to be entitled to federal habeas relief, a petitioner must establish that he is being held in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2241; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). The petition in this case was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and so the AEDPA's provisions apply here. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication of the petitioner's constitutional

9

claims was based on unreasonable fact-finding or was contrary to, or involved an unreasonable application of, clearly established federal law." *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000)). The burden of establishing a right to federal collateral relief resides with the petitioner. *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009). Section 2254(d) "…preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Richter*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id*. "A [petitioner] whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke*, 106 F.3d 1381, 1388 (7th Cir. 1997).

## II.
## Petitioner's habeas claims fail to allege any violation of federal law, are barred by procedural default, and are otherwise without merit.

### *A. Clark alleges no violations of federal law and his claims are not cognizable.*

Initially, Clark asserts no violations of federal law with regard to these claims. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990); *see also, Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (vacating the judgment of the Seventh Circuit, noting that the Court of Appeals'

reversal of the denial of federal habeas relief, "… contained no hint that it thought the violation of Indiana law it had unearthed also entailed the infringement of any federal right," and that the court framed Corcoran's claim as whether "the Indiana trial court considered non-statutory aggravating circumstances … in contravention of *state law* …") (*emphasis in Corcoran*)).

Clark offers three grounds in support of his amended petition as follows: Ground One, his attorneys did not pursue "overwhelming evidence of lack of intent"; Ground Two, Matara Muchowicz provided false testimony at deposition and trial, and; Ground Three, an unknown contributor to DNA found at the crime scene "indicates [Matara] was doing something she did not reveal w/ testimony" (D.E. 15; Petition at 3-4). While Clark's first asserted ground appears to challenge counsel's representation, he invokes no clearly established federal law or constitutional right, nor does he allege any specific deficiency in counsel's representation. Further, Clark does not explain how any act or omission by counsel cost him a reasonable probability of a different outcome at trial. Clearly established federal law requires a petitioner to demonstrate that his counsel's performance was unconstitutionally deficient and that the deficient performance prejudiced him. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 692 (1984). A petitioner's failure to satisfy either the performance or the prejudice prong of the *Strickland* test is fatal to his ineffectiveness claim. *Strickland*, 466 U.S. 668 at 687.

Aside from his failure to raise this claim to Indiana's appellate courts, Clark fails to make a claim under clearly established federal law and therefore fails to

assert any bases capable of warranting habeas relief. Clark's failure in this regard notwithstanding, his asserted Ground One in the amended petition is based on his misguided preoccupation with evidence of intoxication and his lack of understanding that this record contains overwhelming evidence that he killed Samantha intentionally. The defense asserted at trial by Clark's attorney was that Clark did not have the requisite intent, and trial counsel presented evidence of intoxication to that end and argued accordingly to the jury (Ex. K at 8, 10, Ex. O at 4). As the Indiana Court of Appeals correctly observed, "Clark's defense [that he acted only with reckless intent] permeated voir dire, opening and closing statements, and the jury was given instruction on reckless homicide in addition to murder" (Ex. K at 16).

Appellate counsel argued fundamental error with regard to the prosecutor's suggestion in closing that the crime of reckless homicide was more appropriately intended for deaths resulting from reckless driving, noting that Clark's defense at trial was that he did not have the requisite *mens rea* for murder, and that the State's comments in closing "stripped Ian Clark of his only available defense" (Ex. D at 16-17). And, on appeal from state post-conviction review, Clark's attorneys set forth in detail trial counsel's efforts to persuade the jury that Clark did not kill Samantha knowingly or intentionally, and argued that both trial and appellate counsel were ineffective for failing to adequately challenge the amendment to the charging information because such was inconsistent with the chosen defense (Ex. H

at 15-16, 26-27). Clark's vague suggestion that his lawyers "did not pursue the overwhelming evidence of [Clark's] intent" is not factually supported by this record.

Further, in suggesting some deficiency on behalf of any lawyer that represented him in state court Clark fails to recognize that the State's evidence of his intent to kill Samantha was overwhelming, as was correctly and expressly found by the Indiana Court of Appeals on appeal from post-conviction proceedings (Ex. K at 16 ("Importantly, the State presented evidence at trial establishing the extent and deliberate and horrendous nature of the child's injuries to counter Clark's claim that his actions were reckless"). An emergency room doctor described Samantha's "fresh" injuries as the worst he had observed in twenty years, and that neither one fall, nor multiple falls, nor multiple household accidents, could possibly have caused Samantha's injuries (Tr. 285-87). Further, whether Clark was or was not intoxicated is irrelevant to his intent under Indiana law. See I.C. § 35-41-2-5. The statute provides that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state that is an element of the offense." *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind. 2001). Clark's vague suggestion that his lawyers ignored evidence regarding his intent, aside from his failure to assert any violation of clearly established federal law and procedural default, is factually unsupported and legally without merit.

13

### B.   Clark's grounds were not raised to Indiana's appellate courts.

None of Clark's habeas claims were raised to Indiana's appellate courts, rendering all of them barred by procedural default. As set forth above, Clark raised on direct review allegations of erroneous admission of evidence, prosecutorial misconduct, improper comment by the trial court, and improper use of an aggravating circumstance. On post-conviction appeal, Clark argued that counsel was ineffective for failing to move for a mistrial when the State amended the charging information during trial, failing to withdraw the insanity defense, and failure to object to what he characterized as instances of prosecutorial misconduct. When a habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Further, failure to present habeas claims to the state's highest court results in procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

Regarding Clark's asserted Grounds Two and Three, his amorphous statement that he can show that Matara was dishonest in her testimony is not a coherent claim for relief in state or federal court. Clark has never litigated this claim in any form in Indiana's courts, and accordingly may not raise it for the first time to this Court on habeas review. The federal habeas statute requires that a petitioner give state courts a *fair* opportunity to address a claim. *Id*. at 844

(emphasis in original); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). Both the Supreme Court and the Seventh Circuit have strictly adhered to this requirement because comity requires that state courts be given the first opportunity to act on a claim before federal courts can act. *See e.g.*, *Boerckel*, 526 U.S. at 844. "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Id.* None of Clark's claims meet this threshold requirement for federal habeas review in addition to Clark's failure to identify any violation of a federal constitutional right or clearly established federal law.

## CONCLUSION

WHEREFORE, Respondent respectfully requests this Court dismiss the petition with prejudice because it raises only claims that are barred by procedural default and fail to identify or allege any violation of federal law.

Respectfully submitted,

CURTIS T. HILL, JR.
Attorney General of Indiana

s/James B. Martin
James B. Martin
Deputy Attorney General

Attorneys for Respondent

15

# CERTIFICATE OF SERVICE

      I certify that on May 17, 2018, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Indiana by using the CM/ECF system. I have served the foregoing document on the individual listed below through U.S. Mail, first-class postage prepaid:

Ian J. Clark
DOC # 104092
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
Michigan City, IN 46360

                                              /s/James B. Martin
                                              James B. Martin
                                              Deputy Attorney General

Office of Attorney General
Indiana Government Center South, 5th Fl.
302 W. Washington St.
Indianapolis, IN 46204
Telephone (317) 232-6270
james.martin@atg.in.gov

# EXHIBITS TO RESPONDENT'S RETURN
# TO ORDER TO SHOW CAUSE

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent submits the following as Exhibits to his Return to the Order to Show Cause filed in the above-captioned case:

Exhibit A:   Chronological Case Summary, *State v. Clark*, Cause No. 43C01-0705-FA-127;

Exhibit B:   Post-Conviction Chronological Case Summary, *Clark v. State*, Cause No. 43C01-0705-FA-127;

Exhibit C:   Appellate Case History, *Clark v. State*, Cause No. 43S00-0810-CR-575;

Exhibit D:   Brief of Appellant, *Clark v. State*, Cause No. 43S00-0810-CR-575;

Exhibit E:   Brief of Appellee, *Clark v. State*, Cause No. 43S00-0810-CR-575;

Exhibit F:   Opinion, *Clark v. State*, Cause No. 43S00-0810-CR-575;

Exhibit G:   Appellate Case History, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit H:   Brief of Appellant, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit I:   Brief of Appellee, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit J:   Reply Brief, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit K:   Opinion, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit L:   Petition for Transfer, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit M:   Response to Petition for Transfer, *Clark v. State*, Cause No. 43A03-1605-PC-00970;

Exhibit N:   Order Denying Transfer, *Clark v. State*, Cause No. 43A03-1605-PC-00970, and;

Exhibit O:   Findings of Fact and Conclusions of Law, *Clark v. State*, Cause No. 43C01-0705-FA-127.